

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00099-CR

_____

JESSE LEE DIAMOND, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29396

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After Jesse Lee Diamond had been placed on one-year deferred adjudication community supervision for unauthorized discharge reckless endangerment,[1] the State moved to adjudicate Diamond's guilt,[2] and the trial court adjudicated Diamond guilty and sentenced him to one year in county jail.

Diamond appeals the trial court's judgment of conviction, urging claims that the trial court erred in accepting his unknowing and involuntary pleas of true to the State's alleged violations and that there was insufficient evidence to support the trial court's findings of true without considering Diamond's erroneously accepted pleas. Because (1) the trial court did not err when it accepted Diamond's pleas of true and (2) sufficient evidence supports the adjudication of Diamond's guilt, we affirm the trial court's judgment.

At the beginning of the hearing on the State's amended motion to adjudicate Diamond's guilt, defense counsel stated, "Your Honor, I'm looking at a copy of the amended motion to adjudicate community supervision . . . [and] [a]s to the -- each and every allegation, 1 through 7, Mr. Diamond pleads true but true with an explanation and/or we believe [he has an] excuse for the

---

[1]*See* TEX. WATER CODE ANN. § 7.154 (West 2008). Diamond had been charged originally with the offense of intentional or knowing unauthorized discharge into or adjacent to a water way, but pled to the lesser-included offense of unauthorized discharge reckless endangerment.

[2]In its amended motion, the State alleged that Diamond violated the terms and conditions of his community supervision by: (1) failing to report to the community supervision department for the months of March, April, May, June, July, August, September, and October 2016; (2) failing to pay court costs in the amount $285.00, a fine in the amount of $600.00, and attorney fees in the amount of $2,280.00, at a combined monthly rate of $528.00; (3) failing to pay a community supervision fee of $60.00 per month for the months of March, April, May, June, July, August, September, and October 2016; (4) failing to pay the Crime Stoppers' fee, assessed in the amount of $50.00, within 180 days; (5) failing to reimburse the community supervision department $10.00 for the cost of urinalysis testing; (6) failing to report any changes in address, employment, or arrest; and (7) failing to appear in court on October 18, 2016.

allegations." After calling Diamond to the stand, trial counsel asked Diamond if he was told he could have any witnesses to testify on his behalf at the hearing, to which Diamond responded affirmatively. Trial counsel then asked, "Now, you heard me tell the Judge that you were pleading true to each one of these but there were explanations and excuse -- or reasons that it happened or didn't happen, correct?" Diamond responded, "Yes, sir." Diamond then admitted that he failed to report to the community supervision office for the months of March, April, May, June, July, August, September, and October 2016. He followed his admission by explaining that his automobile was not working properly. When the State informed the trial court that it would like to call witnesses if he was going to give explanations, Diamond's counsel assured the trial court, "He did plead true, Judge." The trial court reiterated, "[H]e pled true," and then asked Diamond if he was testifying as to the truth of the allegations or if he was "intending to testify as to the adjudication or as to punishment?" Diamond conceded that he was testifying as to punishment. The trial court responded, "Then based on the pleas of true by Mr. Diamond, we'll find those true and we'll proceed -- we'll adjudicate him guilty and proceed with punishment at this point."

The State proceeded to call Mariah May, who was the community supervision officer who instigated the motion to adjudicate guilt. The State began, "And, you've understood he's pled true to these allegations that you've alleged in this motion, correct?" To which May responded, "Yes." May was asked why she did not believe Diamond was a good candidate for community supervision. She answered, "Frankly, Mr. Diamond is just not a good candidate for probation. He has made no contact to reach out to our department as to why he didn't report." May continued, "It appears that Mr. Diamond continues to be arrested for various reasons, although minor. I just

3

don't believe that he is a very good candidate for probation." At this point in the hearing, the procedural posture of the case became an issue:

> [Defense Counsel]: Judge, I'm going to object. That's not listed.
>
> THE COURT: That one is not on this motion.
>
> [Defense Counsel]: That's not listed, Judge, so we would object to any testimony about that or that he was arrested.
>
> [The State]: Well, Your Honor, we're in the punishment phase.
>
> THE COURT: We're not in the punishment phase.
>
> [The State]: I thought we were in the disposition phase because the --
>
> THE COURT: I tried to go to the disposition --
>
> [Defense Counsel]: Yeah.
>
> THE COURT: -- phase and you interrupted me.
>
> [Defense Counsel]: And said you wanted to put her on the stand.
>
> [The State]: Your Honor, I believe what happened is he pled true, you found the -- he asked -- Mr. Wilkerson asked are we in the disposition phase, you said yes, so then I said I would like to go first for punishment because it's the State's motion.
>
> THE COURT: And then I adjudicated him guilty, tried to proceed forward, and you interrupted and said, no, you wanted to not do it that way, you wanted to start back from the beginning so we were doing that.
>
> [The State]: That's fine. Okay.

After the State concluded its questioning of May, the trial court asked defense counsel if he would like to cross-examine May, to which counsel responded he did not. The trial court asked, "No further questions as to the -- whether or not I adjudicate Mr. Diamond guilty? That['s] the question

4

right now. That's where we're at. Do you have anything else you'd like to present?" Diamond declined to do so. The trial court then stated, "Based on his pleas of true and the brief testimony by Ms. May, I will adjudicate him guilty of the offenses. We will proceed to punishment to determine what is appropriate." The trial court continued hearing punishment evidence and, subsequently, sentenced Diamond to one year in county jail.

Diamond contends the trial court committed error when it accepted his pleas of true without establishing that the pleas were made freely, knowingly, and voluntarily. Diamond maintains the trial court "believe[d] [he] was not pleading true, but instead intended to present defenses to the allegations." Diamond continues, "This would explain why there is no discussion regarding the consequences of a plea of true." According to Diamond, when he stated that his plea of true would be accompanied by "legal excuses," then "logic would dictate that [Diamond] did not understand that a plea of true would change the hearing into a unitary proceeding regarding punishment." Diamond then claims that, without his pleas of true, the State failed to present sufficient evidence to support the trial court's finding that Diamond violated the conditions of his community supervision.

We review a decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision—for abuse of discretion. *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)); *see In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.); *see* Act of May 26, 2013, 83d Leg., R.S., ch. 1160, § 1, 2013 Tex. Gen. Laws 2887, 2887, *repealed by* Act of May 26, 2015, 84th Leg., R.S., ch. 770, § 3.01, 2015 Tex. Gen. Laws 2321, 2395 (eff. Jan. 1,

5

2017). In a revocation hearing, the trial court is the sole trier of the facts and determines the credibility of the witnesses and the weight given to their testimony. *T.R.S.*, 115 S.W.3d at 321. A trial court's decision to revoke community supervision and to proceed to adjudication is examined in the light most favorable to the trial court's judgment. *Id.*

*(1) The Trial Court Did Not Err When It Accepted Diamond's Pleas of True*

While the record reveals confusion on the part of all participants in the hearing on the State's amended motion to adjudicate, Diamond has failed to provide us with any authority supporting his proposition that his request to present "excuses" somehow converted his pleas of true into pleas of not true, thereby potentially changing the procedural posture of the case. Likewise, Diamond has provided us no authority for his contention that a trial court is required to undertake an in-depth discussion about the consequences of a plea of true.[3] Although the record reflects that Diamond pled true to the allegations contained in the State's amended motion and that the trial court was well within its discretion to accept his pleas of true, we find it unnecessary to delve into a lengthy discussion of Diamond's state of mind or the effect, if any, of the procedural

---

[3]Instead, Diamond contends, "Although no particular recitations are required to meet the due process requirements of a plea of 'true' at a revocation hearing, the record is devoid of indications that the plea was entered knowingly and voluntarily." He continues, "Therefore, the plea of 'true' in this case, entered by Appellant's trial counsel, does not meet the minimum due process requirements for a waiver of those rights."

The record does not support Diamond's assertion that he did not intend to plead true. First, and as pointed out by Diamond, trial counsel stated that, as to "each and every allegation, 1 through 7, Mr. Diamond pleads true." In addition to counsel's statements, Diamond conceded that he was pleading true, but that he wanted to offer "excuses" for his failure to comply with the terms of his community supervision. Moreover, May testified that she understood that Diamond had pled true to the allegations against him. Contrary to Diamond's contention that he unknowingly and involuntarily pled true to violating the terms of his community supervision, the record is clear that he admitted to the allegations against him and also sought to convince the trial court that his punishment should be reduced because he had "excuses" for the violations.

6

confusion that occurred during the hearing. This is so because, even if Diamond had entered a plea of not true, the trial court remained within its power to adjudicate Diamond's guilt.

*(2)    Sufficient Evidence Supports the Adjudication of Diamond's Guilt*

The State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). Proof by a preponderance of the evidence as to any *one* of the alleged violations of the conditions of community supervision is sufficient to support a trial court's decision to revoke community supervision. *Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980)). Here, the State alleged, among other things, that Diamond failed to report to the community supervision office for the months of March, April, May, June, July, August, September, and October 2016. Diamond testified at the beginning of the hearing that he did not report during those months,[4] and his admission was corroborated by May's testimony that "[Diamond] ha[d] made no contact to reach out to [her] department as to why he didn't report." Regardless of the procedural positioning of the case, based on (1) Diamond's admissions that "each and every allegation, 1 through 7" were true, (2) Diamond's testimony that he failed to report during the months alleged in the State's amended motion, and (3) May's corroboration that Diamond did not report to the department, there existed sufficient evidence to support the trial court's finding that Diamond had violated the terms

---

[4]Diamond also indicated that he was aware that he had a right to call witnesses on his behalf, which he did not do.

7

of his community supervision. Thus, the trial court did not err when it adjudicated Diamond guilty and sentenced him to one year in county jail.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     November 27, 2017
Date Decided:       December 8, 2017

Do Not Publish